USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 07/01/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
TIERNAN RAY,                                                            :
                                                                        :
                            Movant,                                     :
                                                                        :          26-mc-278 (LJL)
              -v-                                                        :
                                                                        :          OPINION AND ORDER
STICHTING PENSIOENFONDS PGB et al.,                                     :
                                                                        :
                            Respondents.                                :
                                                                        :
------------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Nonparty Tiernan Ray ("Ray") moves, pursuant to Federal Rules of Civil Procedure 26 and 45 and Local Civil Rules 6.1 and 7.1, for an order quashing the subpoena *ad testificandum* (the "Subpoena") issued by Lead Plaintiff Stichting Pensioenfonds PGB ("PGB") on May 8, 2026, and served on May 18, 2026, in connection with *In re NVIDIA Corporation Securities Litigation*, Civil Action No. 4:18-CV-07669 (N.D. Cal.).  Dkt. No. 1.  For the following reasons, the motion to quash is denied.

## BACKGROUND

PGB and respondent Lannebo Kapitalfrvaltning AB ("Lannebo," and together with PGB, "Respondents") are investors or former investors in the securities of NVIDIA Corporation ("NVIDIA") and Lead Plaintiffs in a federal securities fraud lawsuit pending in the United States District Court for the Northern District of California (the "Class Action Lawsuit").  Dkt. No. 5-2. The Class Action Lawsuit names as defendants NVIDIA and its co-founder, President, and Chief Executive Officer Jensen Huang as well as other executives of NVIDIA.  *Id.* ¶¶ 29–30.  In that proceeding, Respondents allege that NVIDIA and Huang misled investors about NVIDIA's reliance on cryptocurrency mining to drive sales of NVIDIA's flagship products—graphic

processing units ("GPUs") for videogaming.  *Id.* ¶¶ 1–7, 63–75.  Respondents allege that NVIDIA and Huang, in their public remarks, minimized the outsized impact that cryptocurrency was having on the company's revenues from sales of GPUs.  *Id.* ¶¶ 174–75.  When cryptocurrency prices dropped, NVIDIA's sales declined dramatically, resulting in a corresponding decline in NVIDIA's stock price.  *Id.* ¶¶ 155–71.

In their complaint in the Class Action Lawsuit, Respondents rely in part on a statement allegedly made by Huang to a reporter for Barron's and that was published in an article (the "Article") the day after NVIDIA's February 8, 2018 earnings call.  In the Article, the reporter states that he asked Huang "if he wanted to point out anything in particular about the report and outlook," and that Huang responded "Clearly, there's been a lot of talk about crypto" and that cryptocurrency represented a "small, overall" "part of our business this past quarter."  *Id.* ¶¶ 67, 207.  Respondents allege that the statement was materially false and misleading, *id.* ¶¶ 208–09, because cryptocurrency was not a small part of NVIDIA's business but rather represented nearly 20% of NVIDIA's entire fourth quarter fiscal 2018 revenues across all business segments.  *Id.* ¶ 208.

In reversing and remanding the district court's order dismissing Respondents' complaint, the United States Court of Appeals for the Ninth Circuit held that Respondents alleged that Huang and the company's Chief Financial Officer "made materially false or misleading statements during the Class Period, leading investors and analysts to believe that NVIDIA's crypto-related revenues were much smaller than they actually were."  *E. Ohman J:or Fonder AB v. NVIDIA Corp.*, 81 F.4th 918, 936 (9th Cir. 2023).  One of the statements upon which the court relied in reaching that conclusion was Huang's quote to Barron's regarding the "small, overall" part of NVIDIA's business represented by cryptocurrency.  *Id.* at 933.

Movant in the instant proceeding, Tiernan Ray, was the author of the Article and conducted the interview with Huang that appeared therein. Dkt. No. ¶ 4. He is a professional journalist. *Id.* ¶ 3. From 2005 through approximately July 2018, he was a technology columnist at Barron's. *Id.*

After remand, the district court certified the class on March 25, 2026. Order, *In re NVIDIA Corp. Sec. Litig.*, No. 4:18-cv-07669 (N.D. Cal. May 4, 2026). Fact discovery in the Class Action Lawsuit is scheduled to close on September 23, 2026, and trial is scheduled for September 2027. Am. Scheduling Order, *In re NVIDIA Corp. Sec. Litig.*, No. 4:18-cv-07669 (N.D. Cal. May 4, 2026).

In April 2025, the defendants in the Class Action Lawsuit, including Huang, filed their answer to the complaint and alleged that the portion of Huang's alleged false statement in the Article that was quoted in the Complaint was "modified, taken out of context, and [] incomplete." Dkt. No. 5-4 ¶ 207. The plaintiffs served Huang with Requests for Admission, seeking, *inter alia*, an admission that Huang stated in connection with the Article that "crypto was a real part of our business this past quarter, even though small, overall.'" Dkt. No. 13-1 at 14. In July 2025, Huang responded that he lacked sufficient knowledge or information to admit or deny the request, that he could not recall the specifics of what he was asked or stated, and that it was "impossible to know exactly what was said." *Id.* at 14–15.

Thereafter, in September 2025, Respondents served Ray with a document subpoena seeking documents and information relating to the Article. Dkt. No. 4-3. After he was served with the document subpoena, Ray emailed Respondents' counsel to confirm he had received the subpoena. Dkt. No. 13 ¶ 7. In that email, Ray explained to Respondents' counsel:

> When I was writing blog posts for Barron's, I either drafted a blog post in a word processor and then copied the content into the blogging software, or else I input the

3

content directly into the blogging software.  Given that there are no notes on my hard drive for the post referenced, my conclusion is that I typed the content directly into the blog software at that time.

*Id.*; Dkt. No. 13-6.  Ray spoke to Respondents' counsel that same day.  Dkt. No. 13 ¶ 8.

During that phone call, Ray stated, among other things, that (1) he used WordPress blogging software; (2) Huang's handlers would call him after the earnings call and then Huang would come on the line; (3) Ray began with a working draft of the blog post and added to that based on his interview with Huang; (4) Ray would type while he spoke to Huang and make every effort to accurately record what Huang said; and (5) after the call, Ray would clean up the article and publish it directly to Barron's blog.  Dkt. No. 13 ¶ 8.

After retaining counsel, on October 10, 2025, Ray served responses and objections to the document subpoena, stating that he had no responsive documents but also invoking the journalist's privilege.  Dkt. No. 13 ¶ 9; Dkt. No. 4-4.  In May 2026, Ray accepted service of a subpoena for his deposition.  Dkt. No. 13-7.  Ray filed this motion to quash shortly after receiving the deposition subpoena.  *Id.* ¶ 13.

Respondents' counsel seeks Ray's testimony for the sole purpose of certifying that the Article accurately quotes Ray's question to Huang and Huang's response to Ray. Dkt. No. 12 at 1–2.  Counsel represents that they seek limited testimony from Ray on three topics: (1) Ray's recollection (or lack thereof) as to how he specifically quoted in the Article both his questions and Huang's answers from the interview; (2) Ray's custom and practice in quoting interview subjects in general; and (3) Ray's background and qualifications as a journalist.  *Id.* at 14.

## DISCUSSION

Ray argues that the Subpoena should be quashed because the testimony sought is at most of marginal relevance, is disproportionate to the needs of the case, and is unduly

burdensome.  Dkt. No. 3 at 5–11.  He also argues that the information sought is subject to the federal reporter's privilege.  *Id.* at 11–14.

A.        **Federal Rule of Civil Procedure 45**

A subpoena issued pursuant to Fed. R. Civ. P. 45 must meet Fed. R. Civ. P 26(b)(1)'s "overriding relevance requirement" and may be quashed by this Court for failure to do so.  *Ireh v. Nassau Univ. Med. Ctr.*, 2008 WL 4283344, at *5 (E.D.N.Y. Sept. 17, 2008), *aff'd*, 371 F. App'x 180 (2d Cir. 2010) (summary order); *see Peddy v. L'Oreal USA Inc.*, 2019 WL 3926984, at *2 (S.D.N.Y. Aug. 20, 2019).  "The party seeking discovery bears the initial burden of proving the discovery is relevant."  *In re Subpoena to Loeb & Loeb LLP*, 2019 WL 2428704, at *4 (S.D.N.Y. June 11, 2019) (quoting *Citizens Union of City of N.Y. v. Att'y Gen. of N.Y.*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017)).  "If the party issuing the subpoena establishes the relevance of the materials sought, the burden then shifts to the movant to demonstrate an undue burden."  *Id.* (citing *Griffith v. United States*, 2007 WL 1222586, at *2 (S.D.N.Y. Apr. 25, 2007)).

"Whether a subpoena imposes an undue burden depends upon such factors as relevance, the need of the party for the documents, the breadth of the document, the time period covered by it, the particularity with which the documents are described and the burden imposed."  *Id.* (quoting *Night Hawk Ltd. v. Briarpatch Ltd., L.P.*, 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003)).  The inquiry "encompasses both the personal hardship to the subpoenaed party and the wider social consequences of permitting discovery."  *In re Fosamax Prods. Liab. Litig.*, 2009 WL 2395899, at *3 (S.D.N.Y. Aug. 4, 2009) (citing *Solarex Corp. v. Arco Solar, Inc.*, 121 F.R.D. 163, 169 (E.D.N.Y. 1988)).  "The trial court has broad discretion to determine whether a subpoena imposes an undue burden."  *Id.* (citing *Jones v. Hirschfeld*, 219 F.R.D. 71, 74 (S.D.N.Y. 2003)); *see Insured Advoc. Grp., LLC v. Spartan Servs. Corp.*, 2024 WL 4893580, at *1–2 (S.D.N.Y. Nov. 26, 2024).  "The standard applicable to depositions is similar to the

standard for document subpoenas[.]" *Ohio Dep't of Ins. v. RPM Mortg., Inc.*, 2020 WL 8513150, at * 2 (S.D.N.Y. Dec. 2, 2020).

Respondents have established the relevance of the requested testimony. The Class Action Lawsuit in which they act as representatives of a class of investors in NVIDIA securities alleges that Huang and NVIDIA committed federal securities fraud by misleading investors with respect to the importance of cryptocurrency miners to NVIDIA's business. The class alleges, among other things, that the statements made in the Article were false and misleading and made with scienter and that investors relied on them and suffered losses as a result. Dkt. No. 5-2 ¶¶ 207–09. If Respondent establishes each of those elements with respect to the statements in the Article, then investors who purchased in reliance on the statements (or where reliance is presumed) may be able to recover for their losses. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 810 (2011) (stating elements of Section 10b claim). But, in order to establish the class's case with respect to that statement, Respondent will have to be able to show that Huang made the statements reflected in the Article. If he did not make the statements or if they are misquoted, then (depending on the extent of the misquotation), the class may not be able to recover. *See DoubleLine Cap. LP v. Oderbrecht Finance, Ltd.*, 323 F. Supp. 3d 393, 451 (S.D.N.Y. 2018) (in order to state a Rule 10b-5 violation, the defendant "must have 'made' the alleged material misstatements." (quoting *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 141 (2011))); *S.E.C. v. Seahawk Deep Ocean Tech., Inc.*, 166 F.R.D. 268, 271–72 (D. Conn. 1996) (where the SEC alleged that "the defendant made false statements to reporters in order to manipulate" the stock price, testimony to "confirm the accuracy of the statements' was "directly relevant" to the SEC's "proof of its underlying claims.").

Huang and NVIDIA have put at issue whether Huang made the statements and, if so,

6

whether the Article accurately quotes them.  *See* Dkt. No. 13-1 at 14–15.  Ray's testimony thus is directly relevant to a significant issue in the Class Action Lawsuit; he is a percipient witness to the statements made by Huang.

Ray next argues that even if it is relevant, the testimony is disproportionate to the needs of the case.  He points out that "[t]he Article contains just one of the many alleged misrepresentations at issue" in the Class Action Lawsuit and that it is only "one among more than a dozen identified in the 263-paragraph pleading."  Dkt. No. 3 at 6–7; *see also id.* at 3.  Ray also points out that he told PGB's counsel that he has no recollection of the Article or of the interview with Huang.  *Id.* at 4, 7.

The fact that the statements in the Article are one among many alleged to be false and misleading does not undermine the relevance of Ray's testimony.  Huang and NVIDIA's liability may rest upon the statement in the Article alone.  It is sufficient under the federal securities laws that a defendant have made one false statement with scienter as long as plaintiffs prove reliance, causation and damages.  *See In re Teva Sec. Litig.*, 512 F. Supp. 3d 321, 335 (D. Conn. 2021) ("a plaintiff can establish that a defendant has 'violated' Section 10(b) by alleging just a single misstatement or omission."); *Ferraro Family Found., Inc. v. Corcept Therapeutics Inc.*, 2021 WL 3748325, at *17 (N.D. Cal. Aug. 24, 2021) (same).  A plaintiff does not need to prove more than one.  Moreover, as Judge Wood has pointed out, an argument such as Ray's admits of no logical limiting principle.  "[D]oes testimony become less necessary or critical to a claim when plaintiff brings one other, similar claim, or ten, or a hundred?"  *Application of Waldholz*, 1996 WL 389261, at *3 (S.D.N.Y. July 11, 1996).

Likewise, Ray cannot defeat the Subpoena by claiming that he has no recollection of the Article in papers submitted in relation to this action.  "[L]ack of memory is generally 'an

7

insufficient basis on which to quash the deposition subpoena.'" *Lynch v. City of New York*, 2021 WL 5140728, at *5 (S.D.N.Y. Nov. 4, 2021) (quoting *City of Almaty v. Sater*, 2020 WL 2765084, at *3 (S.D.N.Y. May 28, 2020)).  A reluctant deponent will not infrequently claim a lack of recollection about the subject as to which he is to be deposed.  If that were enough, the public's right to "every man's evidence," *see Jaffee v. Redmond*, 518 U.S. 1, 9 (1996), would be defeated.  Respondent is entitled to test Ray's claimed lack of recollection.  Moreover, as Respondent points out, Ray's testimony regarding his reporting experience and his practices in conducting interviews and reporting articles may well suffice in the absence of his direct recollection of the interview in question.  *See Waldholz*, 1996 WL 389261, at *1 (testimony as to "his general reporting practices, and as to whether he followed them in researching and writing the article in question" would be sufficient); *Tracinda Corp. v. DaimlerChrysler AG*, 362 F. Supp. 2d 487, 496–97 (D. Del. 2005) (statements in the article were admissible as past recollection recorded where author testified "that the article was written while the interview was fresh in his mind" and that it was his "general practice" to confirm the accuracy of the quotes he reported).

Ray argues also that he should not be deposed until after Huang is deposed.  Dkt. No. 3 at 7–8.  It is true that, under Rule 45, "[w]here discovery is sought from a non-party, the 'Court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on the non party.'" *Fecteau v. City of Mt. Vernon*, 2025 WL 2391410, at *5 (S.D.N.Y. Aug. 15, 2025) (quoting *Lockton Partners, LLC v. Stone Point Cap. LLC*, 2025 WL 1699254, at *2 (S.D.N.Y. May 29, 2025)).  In evaluating whether discovery on a nonparty constitutes an "undue burden," Fed. R. Civ. P. 45(d)(3)(A)(iv), one consideration is "whether the requested information can be obtained from the parties themselves." *Cerco Bridge Loans 6 LLC*

*v. Schenker*, 2024 WL 4165128, at *2 (S.D.N.Y. July 16, 2024) (quoting *Fishon v. Peloton Interactive, Inc.*, 336 F.R.D. 67, 69 (S.D.N.Y. 2020)); *see also In re 650 Fifth Ave. & Related Props.*, 2013 WL 12335763, at *3 (S.D.N.Y. Aug. 29, 2013); *see Alcon Vision, LLC v. Allied Vision Grp., Inc.*, 2019 WL 4242040, at *2 (S.D.N.Y. Sept. 6, 2019).  That said, "there is no absolute rule that party sources must be exhausted before calling upon third parties" where there would not otherwise be an undue burden on the nonparty seeking to quash the subpoena.  *Liner Freedman Taitelman Cooley, LLP v. Lively*, 2025 WL 2205973, at *4 (S.D.N.Y. Aug. 4, 2025) (quoting *Jam Indus. USA, LLC v. Gibson Brands, Inc.*, 2020 WL 4003280, at *4 (S.D.N.Y. July 15, 2020)); *see also Lynch*, 2021 WL 5140728, at *6 ("Although special weight may be given to an individual's status as a non-party" in undue burden analysis, "it is not determinative") (citing cases).

Those considerations ultimately bear little weight in the undue burden analysis as applied to the facts of this case.  First, Huang has already, through his responses in his Requests for Admission in the Class Action Lawsuit, formally denied any memory of the interview at issue in that action.  Dkt. No. 13-1 at 14–15.  Moreover, even considering that Huang is an alternative source for the same testimony, Ray has not established that the deposition will impose an undue burden on him.  He asserts that the deposition is an "inherently intrusive and onerous process requiring a substantial investment of resources."  Dkt. No. 3 at 8–9.  But that statement is conclusory.  "Because the burden is on the party seeking to quash a subpoena, . . . that party cannot merely assert that compliance with the subpoena would be burdensome without setting forth the manner and extent of the burden and the probable negative consequences of insisting on compliance. . . . [I]nconvenience alone will not justify an order to quash a subpoena that seeks potentially relevant testimony."  *In re Public Joint Stock Co. Nat'l Bank Trust Section 1782*

9

*Action*, 2026 WL 1064850, at *9 (S.D.N.Y. Apr. 17, 2026) (quoting *Kirschner v. Klemons*, 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005)); *see Ohio Dep't of Ins. v. PRM Mortg., Inc.*, 2020 WL 8513150, at *3 (S.D.N.Y. Dec. 2, 2020) (rejecting bare contention that deposition would be an undue burden as "conclusory" and collecting cases).  The courts in this District have long held that "'[t]he obligation for sitting for a deposition [does] not, in and of itself,' demonstrate undue burden."  *Great Am. Ins. Co. v. Gemstone Prop. Mgmt., LLC*, 2026 WL 353609, at *1 (S.D.N.Y. Feb. 9, 2026) (quoting *Probulk Carriers Ltd. v. Marvel Int'l Mgm't & Transp.*, 180 F. Supp. 3d 290, 293 (S.D.N.Y. 2016)); *see also City of Almaty*, 2020 WL 2765084, at *3 (finding "inconvenience . . . without more, is not a basis to quash a subpoena.").  Respondent seeks to depose Ray only on limited subjects.  There is no reason to believe that such testimony will impose on Ray a burden that is undue.

## B.    The Reporter's Privilege

Finally, Ray argues that his testimony is protected by the federal reporter's privilege.  "It is settled law in this Circuit . . . that a journalist possesses a qualified privilege protecting him or her from the compelled disclosure of even nonconfidential materials."  *United States v. Treacy*, 639 F.3d 32, 42 (2d Cir. 2011).  Underlying the privilege is the notion that "[i]f the parties to any lawsuit were free to subpoena the press at will, it would likely become standard operating procedure for those litigating against an entity that has been the subject of press attention to sift through press files in search of information supporting their claims."  *Gonzales v. Nat'l Broad. Co., Inc.*, 194 F.3d 29, 35 (2d Cir. 1999).  Were that true, journalists would be burdened with the "heavy cost of subpoena compliance," and their ability to perform their duties would be impaired "if potential sources were deterred from speaking to the press . . . because of the likelihood they would be sucked into litigation."  *Id.*  Thus, under federal common law a journalist is presumptively protected from the requirement to disclose press materials in response to a

subpoena.

That privilege, however, is a qualified one.  Where the information sought is not confidential material or from a confidential source, the party seeking discovery may overcome the "journalist's privilege" by showing "that the materials at issue are of likely relevance to a significant issue in the case, and are not reasonably obtainable from other available sources." *Id.* at 36.  "It is axiomatic that the burden is on the party claiming the protection of a privilege to establish those facts that are essential" to its invocation. *Von Bulow by Auerperg v. von Bulow*, 652 F. Supp. 823, 826 (S.D.N.Y. 1986) (quoting *In re Grand Jury Subpoena*, 750 F.2d 223, 224 (2d Cir. 1984)).  Ray is not entitled to protection of the privilege.

First, Respondents have shown that the testimony sought here is of relevance to a significant issue in the case. *See supra* at pp. 6.

On the second point, Ray argues that because Huang has not yet been deposed, there is another source from which the same information could be obtained, such that Respondents are unable to overcome the application of the journalist's privilege.  Ray asserts, in effect, that he should not be required to sit for a deposition until after Huang has sat for a deposition and answered the question whether he made the statement reported in the Article.

A party seeking to depose a reporter about nonconfidential information is required to show that the information is "not reasonably obtainable from other available sources." *Gonzales*, 194 F.3d at 36.  That standard is more relaxed than the proof required where a party seeks information that would reveal confidential sources. *See id.*  In the latter circumstance, the court applies the standards set forth by the Second Circuit in *In re Petroleum Products Antitrust Litigation,* 680 F.2d 5, 7 (2d Cir.1982).  In that circumstance, the requesting party must "exhaust all other possible alternatives before seeking the materials at issue from the journalist in

11

possession of them." *Williams v. NBC Universal Media LLC*, 2025 WL 2437381, at *13 (S.D.N.Y. Aug. 25, 2025), *motion to certify appeal denied*, 2026 WL 986271 (S.D.N.Y. Apr. 13, 2026); *cf. Sokolow v. Palestinian Liberation Org.*, 2012 WL 3871380, at *3 (S.D.N.Y. Sept. 6, 2012) ("[T]he standard for relevance to overcome the journalist privilege for non-confidential materials is low."). Where non-confidential information is at issue the party seeking discovery need only show that the information is "not reasonably obtainable." Still, generally speaking, a litigant may not turn to a reporter for information from an interview before turning to the "interview subjects themselves." *Williams*, 2025 WL 2437381, at *13 (citing cases).

Ray argues support that "depositions of alternative sources must be pursued, notwithstanding claims of futility, before a journalist can be forced to testify." Dkt. No. 16 at 3. None of the cases cited by Ray, however, stand for the proposition that the party seeking the deposition of a reporter regarding a non-confidential interview must take the deposition of a third party who already has conclusively and formally denied recollection of the interview. In *United States v. Burke*, 700 F.2d 70, 77 (2d Cir. 1983), the Second Circuit considered the application of the reporter's privilege to confidential information, a context that the Second Circuit in *Gonzales* later held was distinguishable because where nonconfidential information is involved "the nature of the press interest protected by the privilege is narrower" and "the privilege should be more easily overcome." 194 F.3d at 36. Even then, the court rejected defendant's argument that he should have been permitted to subpoena a reporter because no "clear and specific showing" was made that the documents were necessary or critical to the defendant's defense. *Burke*, 70 F.2d at 78. The court concluded that the information sought to be obtained from the reporter "would be merely cumulative" and thus could not defeat the privilege. *Id.* The court ruled only in the alternative that defendant failed to overcome the reporter's privilege by not making a "clear and

specific showing that the materials could not be obtained from another source," because his explanation that counsel would assert the attorney-client privilege to protect information that plainly was not privilege was "lame." *Id.* at 77 n.8.[1]

In this case, however, the Court applies the *Gonzales* standard and not the *Petroleum Products/Burke* standard, and Respondents have used the tools of federal discovery to ask the interview subject himself, Huang, whether he made the statement in the Article. They demanded of Huang that he admit that he made the statement in the Article. Huang refused to do so. He (and NVIDIA) answered that he could not recall the specifics of what he was asked or what he said with respect to the Barron's article at issue and that it was impossible to know what was said. Dkt. No. 13-1 at 14–15 ("Defendant cannot recall the specifics of a question he may have been asked years ago."). The response is deemed to be "conclusively established." Fed. R. Civ. P. 36(b).

"Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be." *SEC v. Collector's Coffee Inc.*, 537 F. Supp. 3d 497, 500 (S.D.N.Y. 2021) (quoting Fed. R. Civ.

---

[1] Ray's other citations similarly miss the mark. Each of them involved the heightened *Petroleum Products*/*Burke* standard and none of them raised the question whether a party who had already received a definitive answer that the only other witness to a conversation had no recollection of it was nonetheless required to ask the question again before taking the limited deposition of a reporter. *See United States v. Whitehead*, 2024 WL 912039, at *3–4 (S.D.N.Y. Mar. 4, 2024) (applying the heightened standard and rejecting the Government's request to subpoena a reporter because the information sought by the Government from the reporter was not necessary or critical and the Government made no effort to identify other sources who could provide the same information); *Blum v. Schlegel*, 150 F.R.D. 42, 46 (W.D.N.Y. 1993) (pre-*Gonzales* and applying the rejected *Petroleum Products* standard to uphold privilege where no effort had been made to depose a third party; the third party could not be required to answer interrogatories or requests for admission); *Pugh v. Avis Rent A Car Sys., Inc.*, 1997 WL 669876, at *4 (S.D.N.Y. Oct. 28, 1997) (applying the *Petroleum Products* standard to uphold privilege where the information sought would be "duplicative and cumulative of the public statements" that were already published).

13

P. 36, advisory committee's note to 1970 amendment). "A fact admitted in response to a request for admission served pursuant to Rule 36 'is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended.'" *JTRE Manhattan Ave. LLC v. Cap. One, N.A.*, 2022 WL 2901402, at *2 (S.D.N.Y. July 22, 2022) (quoting Fed. R. Civ. P. 36(b)). Huang has given his answer, and it will be "binding . . . at trial." *SEC v. Collector's Coffee Inc.*, 2023 WL 8280531, at *5 (S.D.N.Y. Nov. 30, 2025) (quoting *T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co.*, 174 F.R.D. 38, 44 (S.D.N.Y. 1997)).

Ray argues that, before taking his deposition, Respondents are obligated "to depose [Huang] to prove his memory, ask follow-up questions, refresh his recollection, and otherwise go beyond the non-denial contained in the RFA response." Dkt. No. 16 at 3.[2] But there is no reason to believe that Huang would give a different answer at his deposition than he already gave formally in the Request for Admission. Huang's answer in the Request for Admission necessarily was made after Huang and NVIDIA made "reasonable inquiry" and determined that there was no readily obtainable information that could help them provide a further answer. Fed. R. Civ. P. 36(a)(4); *Jacobonson Warehouse Co., Inc. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *7 (S.D.N.Y. May 21, 2022) ("The responding party has an obligation to undertake a 'reasonable inquiry of information known or readily obtainable by it that allows it to fairly admit or deny the request.'" (quoting *T. Rowe Price*, 174 F.R.D. at 43)). If Huang or NVIDIA had a reason to believe that the answer that provided was "materially incorrect or incomplete," they would have been obliged to amend or withdraw their admission. *See R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 41 (S.D.N.Y. 2010) ("the responding party is obligated to supplement its

---

[2] Huang's testimony is not scheduled to take place until September 18, 2026, five days before the close of fact discovery. Dkt. No. 13 ¶ 14.

responses in a timely manner if it learns that a response is materially incorrect or incomplete").

They have not sought to do so.  Indeed, the answer given in response to the Request for

Admission is also consistent with Defendants' answer in the Class Action Case, which qualifies

as an evidentiary admission.  Dkt. No. 5-4 ¶¶ 207–09.  *See Serrano*, 2026 WL 972391, at *5.

If Huang had given the answer he provided in response to the Request for Admission in a

deposition, the Court would not have required proof that Respondents asked follow-up questions

or tried to refresh Huang's memory before permitting Respondents to take Ray's deposition.

Respondents could have stopped with Huang's non-recollection.  With Huang and NVIDIA

having given the answer that they did in a Request for Admission, with all of the obligations and

consequences such a formal response carries with it, there is no reason for the result to be

different.[3]  Huang has indicated that he has made reasonable inquiry and he cannot provide any

further answer to the question whether he made the statement in the Article.  Respondents are not

required to further attempt to refresh his recollection before going to the reporter himself and

asking whether Huang made the statement at issue.  It is not necessary for Respondents to go

through what appears to be a pointless exercise of asking Huang a question he already has been

asked in litigation to avoid it becoming "standard operating procedure for those litigating against

an entity that had been the subject of press attention to sift through press files in search of

information supporting their claims."  *Gonzales*, 194 F.3d at 35.

Ray has also expressed concern with respect to the potential scope of any cross-

---

[3] The obligation under Rule 36 to make reasonable inquiry also answers Ray's argument that there may be "other witnesses to Ray's interview with Huang whom [Respondent] has failed to identify or depose."  Dkt. No. 16 at 4.  After such inquiry, Huang and NVIDIA have answered that they lack sufficient knowledge or information to admit or deny the request and that it was "impossible to know exactly what was said."  Dkt. No. 13-1 at 15.  Ray has not identified where Respondent could go other than to him to find out what was said in the interview if Huang and NVIDIA themselves could not find out after their own search of readily obtainable information.

examination that may result from his deposition.  Dkt. No. 16 at 7–8.  It is of course true that the adversary in a deposition has the right to cross-examine within the scope of the direct examination, which the parties agree would be limited in scope.  *See* Dkt. No. 12 at 1–2 ("As Plaintiffs informed Ray's counsel before he filed his Motion, the deposition they seek is extremely limited in scope," and will be restricted to "certifying that Ray's Article accurately quoted his relevant question and Huang's relevant response," and "to the extent Ray does not specifically remember the interview. . . his custom and practice when quoting his interview subjects and his journalistic background and qualifications.").  It is true too that testimony on those limited topics might open the door to cross-examination on the same.  There is nothing untoward about that result.  There is no reason to believe that answering questions on cross-examination posed by NVIDIA's counsel will impose any greater burden on Ray than answering questions on those same topics when posed by Respondents' counsel.

The Court confronted a similar issue in *Application of Waldholz*.  There, plaintiffs representing a class in a securities class action sought to subpoena a journalist to testify at trial regarding the content of an article he published containing statements of a principal officer of the class action defendant alleged to be false and misleading.  1996 WL 389261, at *1.  The journalist moved to quash the subpoena based on the reporter's privilege.  *Id*.  He claimed that his testimony was not necessary or critical and thus the subpoena should be quashed because he could speak only to "one of many" statements alleged to be misleading.  *Id*. at *3.  He also claimed that he had no notes regarding the conversation at issue and did not specifically recall it.  *Id*. at *1.  Applying the *Petroleum Products* standard, the court denied the motion to quash.  Although the reporter was to testify about only one statement, the court found that his testimony still was "critical to the maintenance of the Class's securities fraud claim" because each allegedly

16

false statement "constituted a separate securities law violation." *Id.* at \*3. "[T]he Class [wa]s entitled to have its day in court, and to adduce evidence, with respect to *each* of its claims." *Id.* And because the officer claimed that he was misquoted in the article, the reporter's testimony was necessary and critical to the claim based on the article. *Id.* at \*1, 3. Even though the reporter claimed not to remember the conversation, he "*could* give testimony as to his general reporting practices, and as to whether he followed them in researching and writing the Article in question." *Id.* at \*1.

*Waldholz* is virtually on all fours with this case. Even if Huang and NVIDIA are alleged to have made many false or misleading statements, the class in the Class Action Lawsuit is entitled to attempt to make its case with respect to each of the statements. Defendants in the Class Action Lawsuit have denied that the Article accurately quoted Huang's statement, claiming that the statement was "modified, taken out of context, and [] incomplete," Dkt. No. 5-4 ¶ 207, and Huang has refused to admit to the statement. Thus, "it is fair to say that this Class claim 'virtually rises or falls with the admission or exclusion of [the reporter's] testimony.'" *Waldholz*, 1996 WL 389261, at \*4 (quoting I*n re Application to Quash Subpoena to Nat. Broadcasting Co., Inc.*, 79 F.3d 346,351 (2d Cir. 1996)). Even if Ray cannot recall the specifics of the conversation with Huang, he can testify to his general reporting practices and whether he followed them in drafting the Article. *Waldholz* was decided before the Second Circuit's decision in *Gonzales* and applied *Petroleum Products*. If the subpoena in *Waldholz* satisfied that more stringent test, there is no reason for the Court in this case to conclude that Respondents have not satisfied a more lenient standard.

17

## CONCLUSION

The motion to quash the subpoena is DENIED.  The Clerk of Court is respectfully directed to close Dkt. No. 1 and to close the case.


SO ORDERED.

Dated: July 1, 2026
      New York, New York

_____
LEWIS J. LIMAN
United States District Judge

18