USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 07/28/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TIERNAN RAY,

Movant,

-v-

STICHTING PENSIOENFONDS PGB et al.,

Respondents.

26-mc-278 (LJL)

MEMORANDUM AND ORDER

LEWIS J. LIMAN, United States District Judge:

Tiernan Ray ("Ray") moves for reconsideration of this Court's order denying his motion to quash the subpoena *ad testificandum* (the "Subpoena") issued by Lead Plaintiffs Stichting Pensioenfonds PGB ("PGB") and Lannebo Kapitalfrvaltning ("Lannebo," and together with PGB, "Respondents") on May 8, 2026, and served on May 18, 2026, in connection with *In re NVIDIA Corp. Sec. Litig.*, Civil Action No. 4:18-CV-07669 (N.D. Cal.) (the "Class Action Lawsuit"). Dkt. No. 18.

Familiarity with this proceeding is presumed. *See Ray v. Stichting Pensioenfonds PGB*, 2026 WL 1893739 (S.D.N.Y. July 1, 2026). In short, Respondents here, Lead Plaintiffs in the Class Action Lawsuit, are investors or former investors in the securities of NVIDIA Corporation ("NVIDIA"). Dkt. No. 5-2. The Class Action Lawsuit names as defendants NVIDIA and its co-founder, President, and Chief Executive Officer Jensen Huang ("Huang") as well as other executives of NVIDIA, and alleges that NVIDIA and Huang misled investors about NVIDIA's reliance on cryptocurrency mining to drive sales of NVIDIA's graphic processing units for videogaming. *Id.* ¶¶ 29–30, 63–75. In their complaint in the Class Action Lawsuit, Respondents rely in part on a statement allegedly made by Huang to Ray, a reporter for Barron's, that was

published in an article (the "Article") the day after NVIDIA's February 8, 2018 earnings call. In the Article, the reporter states that he asked Huang "if he wanted to point out anything in particular about the report and outlook," and that Huang responded "[c]learly, there's been a lot of talk about crypto" and that cryptocurrency represented a "small, overall" "part of our business this past quarter." *Id.* ¶¶ 67, 207. Respondents allege that the statement was materially false and misleading, *id.* ¶¶ 208–09, because cryptocurrency was not a small part of NVIDIA's business but rather represented nearly 20% of NVIDIA's entire fourth quarter fiscal 2018 revenues across all business segments, *id.* ¶ 208.

Plaintiffs in the Class Action Lawsuit served Huang with Requests for Admission ("RFA"), seeking, *inter alia*, an admission that Huang stated in connection with the Article that "crypto was a real part of our business this past quarter, even though small, overall." Dkt. No. 13-1 at 14. In July 2025, Huang responded that he lacked sufficient knowledge or information to admit or deny the request, that he could not recall the specifics of what he was asked or stated, and that it was "impossible to know exactly what was said." *Id.* at 14–15. Thereafter, in September 2025, Respondents served Ray with a document subpoena seeking documents and information relating to the Article. Dkt. No. 4-3. After retaining counsel, on October 10, 2025, Ray served responses and objections to the document subpoena, stating that he had no responsive documents but also invoking the journalist's privilege. Dkt. No. 13 ¶ 9; Dkt. No. 4-4. In May 2026, Ray accepted service of a subpoena for his deposition. Dkt. No. 13-7. Ray filed this motion to quash shortly after receiving the deposition subpoena. *Id.* ¶ 13.

Respondents' counsel seeks Ray's testimony for the sole purpose of certifying that the Article accurately quotes Ray's question to Huang and Huang's response to Ray. Dkt. No. 12 at 1–2. Counsel represents that they seek limited testimony from Ray on three topics: (1) Ray's

recollection (or lack thereof) as to how he specifically quoted in the Article both his questions and Huang's answers from the interview; (2) Ray's custom and practice in quoting interview subjects in general; and (3) Ray's background and qualifications as a journalist. *Id.* at 14.

Ray seeks to quash the subpoena on the basis of the federal reporter's privilege. In its prior Opinion, the Court rejected Ray's arguments and denied Ray's motion to quash. The Court found that the information sought was relevant; that Ray could not defeat the subpoena by claiming he has no recollection of the Article; that, having elicited Huang's response that he lacks recollection of the interview, Respondents were not required to depose Huang first before subpoenaing Ray; and that the subpoena would not impose an undue burden on Ray. *Ray*, 2026 WL 1893739, at *4–5. The Court determined that Ray's testimony is not protected by the reporter's privilege, because the testimony sought is of relevance to a significant issue in the Class Action Lawsuit, and the information is not reasonably obtainable from other available sources. *Id.* at *5–8.

Ray argues that the Court should reconsider its prior Opinion because: (1) the request for admission in the Class Action Lawsuit was directed only at Huang, not at Huang and NVIDIA; (2) Huang's RFA response and answer to the complaint in the Class Action Lawsuit as to whether Huang made the statement quoted in Ray's article are not consistent; (3) there were additional NVIDIA witnesses that Respondents should have interviewed that may have relevant information; (4) the information is reasonably attainable from other sources because Huang has not been deposed; and (5) the subpoena would be unduly burdensome on Ray in consideration of the wider social consequences of permitting discovery. Dkt. No. 19 at 1. Ray has identified errors in this Court's opinion. None of those errors, however, supports reconsideration.

"A motion for reconsideration should be granted only if the movant identifies 'an

intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Spin Master Ltd. v. 158*, 2020 WL 5350541, at *1 (S.D.N.Y. Sept. 4, 2020) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013)). "The standard for granting a motion for reconsideration 'is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the Court.'" *Justice v. City of New York*, 2015 WL 4523154, at *1 (E.D.N.Y. July 27, 2015) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). Reconsideration of a court's previous order is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Mgmt. Sys., Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (citation omitted). It is not a "vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)). Additionally, where an error is identified, reconsideration is warranted "only where the court has overlooked matters . . . which might have materially influenced the earlier decision." *Morales v. Quintiles Transactional Corp.*, 25 F. Supp. 2d 369, 372 (S.D.N.Y. 1998) (quoting *Enzo Biochem, Inc. v. Johnson & Johnson*, 866 F. Supp. 122, 123 (S.D.N.Y. 1994)).

First, Ray argues that the Court should reconsider its prior Opinion on the basis that Huang's RFA response that he "cannot recall the specifics of a question he may have been asked years ago" and that it is "impossible to know exactly what was said" in that interview is both directed only against Huang and is a neither admit-nor-deny response that has no evidentiary

weight. Dkt. No. 19 at 3–4.

The Court's prior Opinion acknowledges that the RFA was served only on Huang. *See Ray*, 2026 WL 1893739, at *2 ("The plaintiffs served Huang with Requests for Admission" and "Huang responded"). At other points, however, the Court stated that NVIDIA had responded to the RFA along with Huang. *See id.* at *7 ("[Huang] (and NVIDIA) answered that he could not recall the specifics of what he was asked or said with respect to the Barron's article at issue and that it was impossible to know what was said"); *id.* ("With Huang and NVIDIA having given the answer that they did in a Request for Admission"); *id.* n.3 ("After such inquiry, Huang and NVIDIA have answered that they lack sufficient knowledge or information to admit or deny the request and that it was 'impossible to know what was said.'"). That was a mistake. The RFA was served against only Huang. *See* Dkt. No. 13-1. But the Court's mistake was not material to its decision. Huang was the founder and is the CEO of NVIDIA and he is represented in the Class Action Lawsuit by the same counsel as NVIDIA. In responding to the RFA, he was required to make reasonable inquiries as to the truth of that statement before making it. "An answering party who lacks personal knowledge or information regarding the truth of an RFA is still required to make a 'reasonable inquiry' as to its truth and is relieved of the requirement to answer only if the information cannot be readily obtained to enable it to answer." *Lively v. Wayfarer Studios LLC*, 2025 WL 3442593, at *2 (S.D.N.Y. Dec. 1, 2025) (quoting Fed. R. Civ. P. 36(a)(4)); *Herrera v. Scully*, 143 F.R.D. 545, 548 (S.D.N.Y. 1992) ("[A] party may not refuse to admit or deny a request for admission based upon a lack of personal knowledge if the information relevant to the request is reasonably available to him." (quoting 8 Wright & Miller, Federal Practice & Procedure § 2261 (1970))). Accordingly, before making his response, Huang was required to consult those sources "reasonably available" to him, which as CEO of NVIDIA

would have included any person within that corporation, present at the interview, who would have had knowledge about the interaction.

The Court was also permitted to presume, and it did presume, that information in the possession of NVIDIA about Huang's interview in his capacity as CEO would be in the possession of Huang, who was himself named as an individual defendant in the Class Action Lawsuit. He is the "same individual[] who possess[es] corporate knowledge" as to that interaction. *Montauk U.S.A., LLC v. 148 South Emerson Assocs., LLC*, 2019 WL 2393519, at *3 (E.D.N.Y. June 6, 2019).[1] That the RFA response was not technically on behalf of Huang alone and not NVIDIA is immaterial; the response conveyed that neither Ray nor NVIDIA would be in possession of information indicating definitively whether Huang made the statement in question. That Huang was required to make such an inquiry, and nevertheless responded that he could not recall the interaction, is sufficient to show that Ray did not meet his burden to demonstrate that the information was reasonably obtainable from another source.

Ray also contends that because Huang did not admit that "in connection with the Barron's article referenced in Request No. 23, You were asked by Tiernan Ray if You 'wanted to point out anything in particular about the report and outlook,'" Dkt. No. 13-1 at 15, that response is not "conclusively established." *Ray*, 2026 WL 1893739, at *7 (quoting Fed. R. Civ. P. 36(b)). Ray is correct that because Huang did not admit that he was asked the specific question in his interview, his response is not "conclusively established." Fed. R. Civ. P. 36(b); *see SEC v.*

[1] As to NVIDIA's knowledge of the interaction, "[t]he knowledge of a director, officer, sole shareholder or controlling person of a corporation is imputable to that corporation." *Sjunde AP-Fonden v. Goldman Sachs Grp., Inc.*, 798 F. Supp. 3d 416, 436 (S.D.N.Y. 2025) (quoting *Battino v. Cornelia Fifth Ave, LLC*, 861 F. Supp. 2d 392, 405 (S.D.N.Y. 2012)). As the sole subject of the interview, Huang is the director with knowledge, and that knowledge would be imputed to NVIDIA. There is no suggestion that NVIDIA would have had any understanding contrary to the understanding held by Huang.

*Collector's Coffee Inc.*, 2023 WL 8280531, at *5 (S.D.N.Y. Nov. 30, 2023) ("With respect to matters deemed admitted in response to request for admission . . . it is well established that 'Rule 36 responses become, in effect, sworn evidence that is binding upon the respondent at trial.'") (quoting *T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co., Inc.*, 174 F.R.D. 38, 44 (S.D.N.Y. 1997)). The Court's prior Opinion was inaccurate insofar as it suggested that the non-admission (as opposed to an admission) is "binding at trial." *Ray*, 2026 WL 1893739, at *7. As to the question here, however, that is a distinction without a difference. Huang's RFA response, though not a binding admission, is still admissible evidence in the form of a party opponent statement. *See* Fed. R. Evid. 801(d)(2) (an out-of-court statement offered for its truth is not hearsay where the opposing party's statement "was made by the party in an individual or representative capacity"); *see Nat'l Union Fire Ins. Co. of Pittsburgh v. PVT Ltd.*, 338 F.R.D. 579, 586 (S.D.N.Y. 2021) (holding that a prior admission that the court allowed to be withdrawn and amended, while no longer "conclusive" because not an admission, "may be used as evidentiary admissions"). That is, although the RFA response does not remove that issue from the case, it may be relied on by Plaintiffs in proving their case and in countering any statement by Huang that he now remembers the statement to Ray and that it was inaccurately reported. It is immaterial that the response constitutes only an evidentiary admission and does not bind.

The Court's point was that Huang's response was a formal one made in the context of pretrial discovery and thus is akin to an answer in a deposition; it was a statement made in response to a tool permitted by the Federal Rules, and that has legal consequence. There is no reason to believe that Huang would have given a different answer if asked the question again in deposition. The fact that the RFA response is not formally binding does not "alter the conclusion reached by the Court." *Lively v. Wayfarer Studios LLC*, 2025 WL 2004286, at *1 (S.D.N.Y. July

16, 2025) (quoting *Justice*, 2015 WL 4523154, at *1). The Court relied on the RFA response for the proposition that Respondents established that Ray's testimony was not "reasonably obtainable from other available sources." *Ray*, 2026 WL 1893739, at *6 (quoting *Gonzales v. Nat'l Broad. Co., Inc.*, 194 F.3d 29, 35 (2d Cir. 1999)). Regardless of the conclusiveness of Huang's RFA response in any future proceeding, the point remains that it is reasonable to conclude that if Huang with his duty to consult others did not remember the statement when responding to the RFA in July 2025, he would not remember it if asked in a deposition in September 2026. Respondents are not required to go through a pointless exercise of deposing Huang before subpoenaing the party with percipient knowledge of a highly relevant issue for a short deposition.

Ray next argues that the Court should reconsider its Opinion because of its statement that the "answer given in response to the Request for Admission is also consistent with Defendants' answer in the Class Action Case, which qualifies as an evidentiary admission." *Ray*, 2026 WL 1893739, at *7. The Court noted that fact in its discussion of whether Ray had met his burden of showing that there was another source from which the same information could be obtained, finding that the consistency between the two answers lent further support to the conclusion that any further deposition of Huang would serve no additional value. *Id.* A close comparison of the two answers confirms the Court's prior conclusion.

In his response to the RFA, Huang admitted that he "was interviewed by Tiernan Ray and that an article relating to parts of that interview was published by *Barron's* on February 9, 2018." Dkt. No. 13-1 at 15. In response to the specific question of whether he was asked if he "wanted to point out anything in particular about the report and outlook," he answered that he "lacks sufficient knowledge or information . . . as the article referenced . . . does not contain a verbatim

transcript of the interview, so it is impossible to know exactly what was said . . . and Defendant cannot recall the specifics of a question he may have been asked years ago." *Id.*

In the Class Action Lawsuit complaint, Plaintiffs alleged that:

> On February 9, 2018, financial news magazine Barron's published an article detailing an interview Defendant Huang gave to a reporter following the February 8, 2018 NVIDIA earnings call. In the article, the author explained that "[w]hen I asked Huang if he wanted to point out anything in particular about the report and outlook, Huang began, 'Clearly there's been a lot of talk about crypto.'" Huang then stated that cryptocurrency represented a "small, overall" "part of our business this past quarter."

Dkt. No. 5-2 ¶ 207. In their answer, Huang and NVIDIA stated that:

> Defendants admit that, on or about February 9, 2018, Barron's published an article regarding an interview of Mr. Huang. Defendants admit that the second sentence of paragraph 207 quotes a portion of statements made by the author of the Barron's article; however, the quoted portion has been modified, taken out of context, and is incomplete. Except as expressly admitted herein, Defendants deny the remaining allegations in paragraph 207.

Dkt. No. 5-4 ¶ 207.

Ray argues that because in the answer to the Class Action Lawsuit complaint Huang/NVIDIA stated that "the quoted material has been modified, taken out of context, or is incomplete," there is a "discrepancy" between that answer and the RFA response that "should be explored through further discovery," as "Huang would have to elaborate on his RFA response and explain the basis for the Answer's statement." Dkt. No. 19 at 7. That is based on a misreading of the answer. The answer does not indicate, as Ray seems to posit, that Huang himself has some memory of the Article article because the answer states that the portion of the Article quoted in the Complaint was "modified, taken out of context, and is incomplete." The Answer's statement that the quoted portion has been so modified refers to how the text of the Article was modified in paragraph 207 of the complaint. In other words, the Answer states that the complaint modified and took out of context the statements as reported in the Article. It does

not state that the complaint takes out of context or is inaccurate with respect to the statement that Huang made to Ray. It is silent as to that issue. The Answer merely acknowledges, as the RFA response already did, that (1) the interview took place, and (2) that whatever was printed in the Article was not a verbatim transcription of what Huang may or may not have said in the interview.

Ray posits that reconsideration of the prior Opinion is merited too because, in a phone call with counsel for Plaintiffs in the Class Action Lawsuit, Ray indicated that "Huang's handlers would call him after the earnings call and then Huang would come on the line." Dkt. No. 13 ¶ 8. That fact, Ray argues, indicates that such "'handlers' may well have been present for the interview," and that Respondents should therefore investigate whether that is the case and if they had any recollection of the interview, and ask those handlers for their testimony before seeking testimony from Ray. Dkt. No. 19 at 7–8. However, and as the Court explained in its prior Opinion, if there were handlers or notetakers who were present at the time of the interview, then those are also sources Huang would have had an obligation to contact (and presumably did contact) in framing his RFA response, as required by Rule 36. Thus, Respondents have reasonably exhausted other sources. It would not be reasonable for Respondents, having directed a RFA to the CEO and person who made the statement and having gotten an answer of "I do not recall," to conduct a deposition that would likely be futile. Nor is there any reason to believe that NVIDIA, the company of which Huang was and is the CEO, would have located any different information.

Ray also raises, as he did in his original motion to quash, that because "Huang is available to be deposed," he must be before it would be appropriate to seek testimony from Ray. Dkt. No. 19 at 8–9. A motion for reconsideration is not the place to "rehash arguments already

made and rejected." *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 185 (S.D.N.Y. 2015). The Court carefully reviewed this argument in its prior Opinion, and specifically applied the law that "a party seeking to depose a reporter about nonconfidential information is required to show that the information is not reasonably obtainable from other available sources." *Ray*, 2026 WL 1893739, at *6–8 (cleaned up). Nor does Ray's invocation of this Court's prior opinion in *Williams v. NBV Univ. Media LLC* constitute either a change in law or support Ray's argument. As the Court acknowledged in the prior Opinion, citing *Williams*, it is true that "generally speaking, a litigant may not turn to a reporter for information from an interview before turning to the 'interview subjects themselves.'" *Ray*, 2026 WL 1893739, at *6 (quoting *Williams*, 2025 WL 2437381, at *13 (S.D.N.Y. Aug. 25, 2025)). It nevertheless concluded that, on the facts presented here, there was no reasonable alternative source from which the information could be sought considering Huang's previous RFA response. *Id.* at *8. The law establishes no absolute rule that a deposition must be taken before a party is permitted to subpoena a non-party reporter about non-confidential information. Plaintiffs in the Class Action Lawsuit have taken advantage of the tools provided for in the Federal Rules of Civil Procedure and received an answer.

Finally, Ray argues that the Opinion overlooked that the Rule 45 burden analysis "must include the wider social consequences of permitting discovery, particularly where First Amendment principles are implicated." Dkt. No. 19 at 10. The Court expressly acknowledged that, under Rule 45, the inquiry as to whether a subpoena imposes an undue burden "encompasses both personal hardship to the subpoenaed party and the wider social consequences of permitting discovery." *Ray*, 2026 WL 1893739, at *3 (quoting *In re Fosamax Prods. Liab. Litig.*, 2009 WL 2395899, at *3 (S.D.N.Y. Aug. 4, 2009)). Additionally, application of the reporter's privilege expressly takes into account the unique role of journalists and the important

concerns referenced by Ray. The Second Circuit explained in *Gonzales* that "[i]f the parties to any lawsuit were free to subpoena the press at will, it would likely become standard operating procedure for those litigating against an entity that has been the subject of press attention to sift through press files in search of information supporting their claims." 194 F.3d at 35. Were that true, journalists would be burdened with the "heavy cost of subpoena compliance," and their ability to perform their duties would be impaired "if potential sources were deterred from speaking to the press . . . because of the likelihood they would be sucked into litigation." *Id.* To accommodate those exact policy concerns, as raised by Ray here, the Circuit "reaffirm[ed] that the qualified privilege for journalists applied to nonconfidential . . . information." *Id.* But the key point, as the Court found in its prior Opinion, is that Ray has not met his burden to show that he has overcome that privilege here, because Respondents have shown "that the materials at issue are of likely relevance to a significant issue in the case, and are not reasonably obtainable from other available sources." *Id.* at 36.

The motion for reconsideration is DENIED. The Clerk of Court is respectfully requested to close Dkt. No. 18.

SO ORDERED.

Dated: July 28, 2026
New York, New York

LEWIS J. LIMAN
United States District Judge